**FOR PUBLICATION**

Order Filed on July 12, 2017 by
Clerk, U.S. Bankruptcy Court -
District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>Catherine M. Smiley<br><br>        Debtor. | Chapter     13<br><br>Case No.:   16-12375 (SLM)<br><br>Judge:    Hon. Stacey L. Meisel |

**CORRECTED OPINION**

**A P P E A R A N C E S :**

Dean G. Sutton, Esq.
18 Green Road
Sparta, New Jersey 07871
*Attorney for Debtor, Catherine M. Smiley*

David S. Cerra, Esq.
Griffin Alexander, P.C.
415 NJ-10, 2nd Floor
Randolph, New Jersey 07869
*Attorney for Hampton Commons Condominium Association, Inc.*

Marie–Ann Greenberg, Esq.,
Standing Chapter 13 Trustee
30 Two Bridges Road, Suite 330
Fairfield, New Jersey 07004

**THE HONORABLE STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

As the Supreme Court has held – state law defines property interests.[1] While this proposition seems rather simple on its face, in bankruptcy we regularly grapple with the intersection of state defined property interests and the Bankruptcy Code.[2] Sometimes, these state and federal principles seemingly collide rather than coexist. This has occurred in cases deciding whether the Bankruptcy Code permits the bifurcation of a lien held by a New Jersey condominium association when the lien is recorded pursuant to the New Jersey Condominium Act,[3] which provides a priority of payment as a result of following certain requirements set forth in the Condominium Act. It is this issue that must be resolved by the Court.

This matter comes before the Court on a confirmation hearing of the Chapter 13 plan ("**Plan**")[4] filed by Catherine M. Smiley (the "**Debtor**"). Under the Plan, the Debtor seeks to, *inter alia*, modify the secured claim filed by Hampton Commons Condominium Association, Inc. (the "**Association**") by reclassifying a portion of the secured claim as unsecured. The Association objects to confirmation, asserting that the Plan should not be confirmed because it improperly seeks to cram-down a partially secured consensual lien on the Debtor's principal residence.[5] The Association maintains that its secured claim is protected by section 1322(b)(2) of Bankruptcy Code and, therefore, it cannot be bifurcated. The Debtor counters by asserting she may, in fact, bifurcate the Association's secured claim pursuant to section 1322(c)(2) of the Bankruptcy Code.

The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.[6]

---

[1] *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914 (1979).
[2] References to the Bankruptcy Code are to the United States Bankruptcy Code, 11 U.S.C. §§ 101, et. seq.
[3] New Jersey's Condominium Act, New Jersey Statute Annotated 46:8B-1.1, *et. seq.*, ("**Condominium Act**").
[4] (Docket No. 12).
[5] (Docket No. 20).
[6] To the extent any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent any conclusions of law might constitute findings of fact, they are adopted as such.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing

Order of Reference from the United States District Court for the District of New Jersey dated July

23, 1984 and amended September 18, 2012.  This matter concerns the confirmation of a Chapter

13 plan.  It constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).  Venue is proper

under 28 U.S.C. § 1408.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The facts relevant to this decision are not in dispute.  The Association is a non-profit

corporation operating as the condominium association for a planned-unit development known as

"Hampton Commons" in Newton, New Jersey.  The Association was established pursuant to the

Condominium Act, and by Master Deed dated February 11, 1986 and recorded September 29,

1986 in the Sussex County Clerk's Office in Deed Book 1385, Page 64, *et seq.* ("**Master Deed**").[7]

The Debtor is the owner of a condominium unit located at 11 Oriole Terrace, Newton, New Jersey

07860 ("**Property**"), a unit within the Association by virtue of a unit deed dated December 17,

1992 and recorded December 30, 1992, in the Sussex County Clerk's Office in Deed Book 1901,

Page 88.[8]  After the Debtor changed her name, the deed was subsequently re-recorded on February

5, 2012 in the Sussex County Clerk's Office in Deed Book 3244, Page 821.

According to Article VII, Sections 7-9 of the Master Deed, each member of the Association

is obligated to pay maintenance fees to the Association on a monthly basis to cover the common

expenses of the Association.  In relevant part, Article VII, Section 9 states:

> 9.      That the owner of each unit is bound to contribute according
> to the percentage of his undivided interest in the common elements
> towards the expenses of administering and of maintenance and
> repairs of common elements, the expenses of administering and

---

[7] (Docket No. 20 at 4-6).
[8] (*Id.* at 7-15).

maintaining the Association, and all of its real and personal property in such amounts as shall from time to time be fixed by the Association. . . .[9]

According to the Association's Bylaws and its Resolution Pertaining to Collection of Delinquent Assessments (the "**Resolution**"), if a unit owner defaults in paying his/her maintenance fees, the Association may accelerate the monthly payment for the remainder of the Association's fiscal year, record a lien against the unit for any portion of the unpaid maintenance fees, and foreclose upon said lien in the same manner as afforded to mortgage lenders.[10]  In pertinent part, the Resolution provides the following:

> [a]ll installment payments on any type of assessment including special assessments shall be due and payable within fifteen (15) days after the due date thereof.  The remaining assessment installments, including any special assessment instalments, shall be accelerated if the delinquent installment has not been paid by ninety (90) days after the due date.  After ninety (90) days the entire assessment balance shall be fully due and payable and the delinquent unit owner shall be notified that a lien for the accelerated assessment amount shall be recorded following a time period set forth in the notice if not paid in full.  Should default continue for a period of thirty days (30) days or more after the filing of the lien, then the Board may foreclose on the lien pursuant to Law and/or commence a suit against the delinquent unit owner to collect the assessment.  The Board shall also notify any Mortgage holder on the unit of the default by the owner.[11]

Article VII, Section 10 of the Master Deed provides that late fees may be assessed for the unit owner's failure to pay maintenance fees on time.[12]  It further provides that reasonable attorney's fees and costs incurred are to be assessed to the defaulting unit owner.[13]  In relevant part, Article VII, Section 10 states:

> 10.    That all charges, expenses and assessments chargeable to any unit plus reasonable attorney's fee [sic] incurred for the

---

[9] (*Id.* at 21).
[10] (*Id.* at 22-24).
[11] (*Id.* at 23).
[12] (*Id.* at 17).
[13] (*Id.*).

recovery thereof, shall constitute a lien against said unit in favor of the Association, which lien shall be prior to all other liens except: (1) assessments liens and charges for taxes past due and unpaid on the unit; and (2) payments due under bona fide mortgage instruments, duly recorded, prior to such assessments. The Association's lien shall be recorded inthe [sic] Clerk's Office of Sussex County pursuant to the Condominium Act, <u>N.J.S.A</u>. 46:8B-21. . . .[14]

On February 29, 2012, the Association recorded a $5,370.08 lien against the Property for unpaid assessments, charges, and expenses due to the Association ("**2012 Lien**").[15] The 2012 Lien was recorded in the Sussex County Clerk's Office in Book 8964, Page 216.[16] On June 12, 2013, the Association recorded a second lien against the Property for $3,723.67 for unpaid assessments, charges and expenses due to the Association ("**2013 Lien**").[17] The 2013 Lien was recorded in the Sussex County Clerk's Office in Book 9143, Page 546.[18] The 2012 and 2013 Liens will be collectively referred to as the "**Liens**."

On February 10, 2016, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code.[19] The Association filed a proof claim on March 14, 2016 asserting a $13,790.45 claim against the Debtor for unpaid condominium maintenance fees. The proof of claim provides for a $9,093.75 secured portion (the total of the 2012 Lien and 2013 Lien combined) and a $4,696.70 unsecured portion. The unsecured portion represents the arrears owed to the Association, which were not part of the Liens and arose after their recordings. The Debtor lists the Property on Schedule A with a $142,000.00 value.[20] Champion Mortgage Company ("**Champion Mortgage**") holds a $174,174.28 first mortgage on the Property. The parties do not

---

[14] (*Id.*) (error in original).
[15] (*Id.* at 26).
[16] (*Id.*).
[17] (*Id.* at 28).
[18] (*Id.*).
[19] (Docket No. 1).
[20] (Docket No. 11 at 3).

dispute that there is insufficient equity in the residence to support both the entire outstanding claim for unpaid assessments and the mortgage held by Champion Mortgage.

### Debtor's Arguments for Cram-Down of the Association's Claim.

On its face, the Plan proposes to cram-down and bifurcate the Association's claim under section 1322(b)(2).  Pursuant to the Plan, the Association's secured claim is reduced to $1,710.00 and the balance of the secured portion is reclassified as unsecured.[21]  The Debtor asserts that "the amount of $1,710.00 was calculated by multiplying the monthly aggregate customary condominium assessments against the unit, $285.00, times 6 months pursuant to [section] 46:8B-21."[22]  Absent from the Plan is any legal analysis/explanation as to how the Association's secured claim may be modified pursuant to section 1322(b)(2).  Although not raised by the Debtor or the Association, the Court notes that at the time the 2013 Lien was recorded, the monthly condominium assessments were $250.00.[23]  Indeed, the Association charged the Debtor a $285.00 monthly condominium assessment, but that only started in January 2014.[24]  Neither the Debtor nor the Association informed the Court of the amount of the monthly condominium assessments for the time period covered by the 2012 Lien.

The Association objected to the Plan.  The Association contends that it is entitled to the full value of its secured claim and that the Debtor's attempt to bifurcate and cram-down the Association's secured claim is in contravention of section 1322(b)(2).  The crux of the Association's arguments is two-fold.  First, the Association asserts section 46:8B-21(b) of the Condominium Act provides condominium association liens with a limited priority over prior

---

[21] (Docket No. 12 at 3, 5-6).

[22] (Docket No. 26 at 3).

[23] (Proof of Claim No. 2 at 7) ("[a]ccelerated [m]onthly assessments from 6/1/2013 through and including 12/31/2013 ($250.00 @ 7 months). . . $1,750.00") (emphasis in the original).

[24] (*Id*. at 9-10).

recorded mortgages to the extent of six months of customary maintenance fees.[25]  Thus, even when

a hypothetical condominium owner's prior recorded mortgages exceed the value of the property

(*i.e.*, the property is "underwater"), the condominium association's lien, even if recorded after the

mortgage is recorded, will always receive, at a bare minimum, the value of six months of

customary maintenance fees if and when the property is foreclosed upon.

Second, the Association asserts that, unless the value of the Property is entirely exceeded

by municipal and federal tax liens, the limited priority created by section 46:8B-21(b) guarantees

a portion of the Association's claim will always have a secured interest in the Property.[26]  A

secured interest in the Property, the Association contends, "trigger[s] protection under the Anti-

Modification Clause [(section 1322(b)(2)], even when there is no other equity in the property that

the [A]ssociation's lien would attach to."[27]  The Association cites to two New Jersey bankruptcy

court decisions, *In re Robinson*[28] ("***Robinson I***") and *In re Robinson*[29] ("***Robinson II***") and one

New Jersey district court decision, *Whispering Woods Condo. Ass'n v. Rones* (*In re Rones*),[30]

wherein the courts held, *inter alia*, that section 46:8B-21(b) provides a limited priority for

condominium associations' liens for unpaid assessments, thereby treating the lien as a security

interest in the debtors' principal residence and preventing it from being modified under a Chapter

13 plan.  Indeed, by asserting its claim is protected by section 1322(b)(2), the Association concedes

its claim is secured by a security interest (a consensual lien).[31]

---

[25] (Docket No. 20 at 32-33).

[26] (*Id.* at 34).

[27] (*Id.* at 33-35).

[28] 231 B.R. 30, 35 (Bank D.N.J. 1997).

[29] No. 11-26981-RTL, 2012 WL 761251, at *1 (Bankr. D.N.J. Mar. 7, 2012).

[30] 551 B.R. 162, 167–68 (D.N.J. 2016).

[31] The Court notes that the Liens appear to be separate and apart from each other.  The 2012 Lien covers unpaid assessments, charges, and expenses due to the Association from February 2012 to December 2012.  (*Id.* at 26).  The 2013 Lien covers unpaid assessments, charges and expenses due to the Association from May 2013 December 2013. (*Id.* at 28).  The Association failed to submit any documents to this Court indicating the 2013 Lien amended and/or a continued the 2012 Lien.

The Court held a confirmation hearing on September 28, 2016. The Debtor argued she is permitted to modify the Association's secured claim pursuant to section 1322(c)(2) – not section 1322(b)(2). The Debtor maintained that section 1322(c)(2) is an exception to section 1322(b)(2). The Debtor acknowledged that section 1322(b)(2) applies by focusing on the exception contained in section 1322(c)(2). Since neither the Debtor nor the Association previously briefed this theory, the Court required supplemental briefing and adjourned the confirmation hearing.

Both the Debtor and the Association submitted supplemental briefing.[32] The Debtor concedes courts have generally applied section 1322(c)(2) to situations involving reverse mortgages and short-term mortgages that come due in full or will come due prior to the end of a debtor's Chapter 13 plan.[33] The Debtor provides no authority with facts similar to this case that utilizes section 1322(c)(2) to permit bifurcation of a condominium association's secured lien. However, the Debtor asserts the plain language of section 1322(c)(2) requires its application to condominium association liens, which by their terms are due in full when they are filed.[34] The Association disagrees and asserts the Debtor is "misreading" section 1322(c)(2).[35] Specifically, the Association contends that section 1322(c)(2) refers to the modification of a payment rather than the modification of a claim.[36] In other words, the Debtor cannot utilize section 1322(c)(2) to modify the Association's entire claim.[37] The Court held a second round of oral arguments on November 9, 2016 and reserved decision.

---

[32] (Docket Nos. 26 and 27).
[33] (Docket No. 26 at 7).
[34] (*Id*.).
[35] (Docket No. 27 at 4).
[36] (*Id.* at 4, 6).
[37] (*Id.* at 4-6).

After the hearing, the Court reviewed the parties' arguments and observed that neither the Debtor nor the Association briefed[38] *Holmes v. Cmty. Hills Condo. Ass'n*.[39]  At the time, *Holmes* was a very recent New Jersey district court decision that remanded a bankruptcy court decision to permit the bankruptcy court to decide whether the condominium association's lien was created by contract, statute, or by both.[40]  According to *Holmes*, the contract-versus-statute distinction is essential in analyzing whether section 1322(b)(2) applies because section 1322(b)(2) only pertains to claims that are "security interests" which, by definition, are consensual and not statutory.[41]  More importantly, the *Holmes* decision was the first New Jersey decision that opined about the possibility of both a consensual and a statutory lien existing at the same time.[42]  Consequently, the Court requested the Debtor and the Association submit additional simultaneous supplemental briefing[43] on whether the *Holmes* decision had any impact on their respective positions.[44]  The Court did not scheduled additional oral arguments.

Both the Debtor and the Association submitted supplemental briefing.[45]  The Debtor continues to maintain that section 1322(c)(2) is an exception to section 1322(b)(2), therefore permitting the cram-down of the Association's secured claim.[46]  However, based on *Holmes*, the Debtor also asserts two new positions.  First, the Debtor asserts that the Association failed to provide the Court with evidence exhibiting it complied with sections 46:8B-21(a) and (b)(6).[47]

---

[38] The Debtor cited to *Holmes* as part of a string cite in one of her supplemental submissions.  *See* (Docket No. 26 at 6).  However, the Debtor failed to elaborate whether the decision impacted her legal position.

[39] No. 15-6834 (KM), 2016 WL 4950993, at *1 (D.N.J. Sept. 16, 2016).

[40] *Id.* at *5.

[41] *Id.* at *4.

[42] *Id.*

[43] The Court also permitted the parties to file responses to each other's supplemental briefs.

[44] After the *Holmes* decision, another New Jersey bankruptcy court addressed whether a homeowner's or condominium association's lien is created by contract and/or by statue.  *See In re Keise,* 564 B.R. 255 (Bankr. D.N.J. 2017) (finding that a homeowner's association's claim is simultaneously secured by both a consensual and statutory lien).  The *Keise* decision is discussed in substantial detail below.

[45] (Docket Nos. 30 and 31).

[46] (Docket No. 30 at 1).

[47] (*Id.* at 3).

Specifically, the Association failed to demonstrate it provided notice to both the Debtor and Champion Mortgage that it was in the process of recording the Liens.[48] Second, the Debtor asserts that the Association's Liens, at least to the extent of the six month priority, are statutory and are therefore not protected by section 1322(b)(2).[49]  To this end, the Debtor argues that since "the Association's statutory lien may be modified under the Bankruptcy Code and since its security interest is completely unsecured and maybe [sic] stripped off under the Bankruptcy Code, the Debtor is entitled to the relief she is seeking [under the Plan]."[50]

On the other hand, the Association first urges the Court that *Holmes* is not binding authority.[51]  The Association argues that the *Holmes* decision neither made a finding nor ruled on the merits of the parties' arguments.  Further, "even if the Bankruptcy Court or the District Court of New Jersey had issued an opinion in *Holmes*, it would be persuasive but not binding on the Court in this case."[52]  Next, the Association asserts that the "distinction between statutory and consensual liens as discussed in *Holmes* does not matter" with regard to the Debtor's original section 1322(c)(2) argument.[53]

In response to the Debtor's allegation that the Association failed to produce evidence indicating it provided notice of the Liens to the Debtor and Champion Mortgage, the Association asserts section 46:8B-21(b)(6) "is not relevant to the matter before the Court."[54]  Nevertheless, the Association submitted to the Court the following: (1) a copy of a June 7, 2013 Notice of Filing of Claim of Lien sent to the Debtor via certified mail; and (2) a copy of a June 7, 2013 letter addressed

---

[48] (*Id.*).
[49] (*Id.* at 4-5).
[50] (*Id.* at 4) (error in original).
[51] (Docket No. 31 at 2).
[52] (*Id.*).
[53] (*Id.* at 4).
[54] (Docket No. 34 at 2).

to Champion Mortgage. [55]   The letter to Champion Mortgage states the following: "[the Association] has filed a Claim of Lien for its unpaid assessments due and owing from the unit owner, Catherine M. Smiley."[56]

## DISCUSSION

Section 1322(c)(2) is an exception to section 1322(b)(2).  Therefore, before the Court can address whether the Debtor's section 1322(c)(2) argument has merit, the Court must first address whether the Association's secured claim is insulated from modification by section 1322(b)(2).  If section 1322(b)(2) does not afford anti-modification protections to the Association's secured claim, the Debtor may modify the Association's secured claim and a section 1322(c)(2) analysis would be superfluous.   If section 1322(b)(2) provides anti-modification protections to the Association's secured claim, then this Court must further analyze whether the exception set forth in section 1322(c)(2) applies.

## I.    Bankruptcy Code Section 1322(b)(2).

A Chapter 13 plan may generally modify the rights of holders of secured claims. Specifically, "a debtor's bankruptcy plan may modify the unsecured portion of a lien down to the amount of the collateral securing it when the collateral is worth less than the lien, a process referred to as 'stripping,' 'cramming down,' or 'bifurcating'  the lien."[57]   Section 1322(b)(2) places an important limit on the general rule – it prohibits modification of the rights of holders of claims secured by a security interest in real property that is the debtor's principal residence:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
> * * *
> (2) modify the rights of holders of secured claims, other than a claim **secured only by a security interest in real property that is the**

---

[55] (Docket No. 34 at 4-14).
[56] (*Id.* at 10).
[57] *Rones*, 551 B.R. at 167.

> **debtor's principal residence**, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . . .[58]

Notably, the plain language of section 1322(b)(2) indicates that the provision applies solely to a "security interest." Fortunately, section 101(51) of the Bankruptcy Code provides a definition of a "security interest": "[t]he term 'security interest' means lien created by an agreement."[59] "As such, it is to be distinguished from a 'statutory lien,' *i.e.*, one 'arising solely by force of a statute on specified circumstances or conditions.'"[60] For the purposes of section 1322(b)(2), examining the type of lien at issue is essential to the analysis.[61] "Assuming the other requirements of section 1322(b)(2) are met, the nature of a lien, *i.e.*, whether it is a consensual lien (security interest), dictates whether modification of the underlying secured claim is permitted."[62]

## II.    The Condominium Association's Lien – Statutory, Consensual, or Both?

Section 101(37) defines "liens" as a "charge against or interest in property to secure payment of a debt or performance of an obligation."[63] The Bankruptcy Code defines three types of liens: judicial liens, security interests, and statutory liens. Although the legislative history indicates that the "three categories are mutually exclusive", the Bankruptcy Code is devoid of any language that expressly makes that conclusion.[64] Notwithstanding the discussion in the legislative history, the Supreme Court dictates that "[p]roperty interests are created and defined by state law."[65]

---

[58] 11 U.S.C. § 1322(b)(2) (emphasis added); *see Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 325–26, 332, 113 S.Ct. 2106 (1993) (chapter 13 debtor cannot strip down a partially unsecured residential mortgage lien secured only by the debtor's principal residence).
[59] 11 U.S.C. § 101(51).
[60] *Holmes*, 2016 WL 4950993, at *4 (citing 11 U.S.C. § 101(53)).
[61] *See Holmes*, 2016 WL 4950993, at *4-5; *In re Rones,* 531 B.R. 526, 530 (Bankr. D.N.J. 2015); *Keise*, 564 B.R. at 258.
[62] *Keise*, 564 B.R. at 258.
[63] 11 U.S.C. § 101(37).
[64] H.R. REP. 95–595, 312, 1978 U.S.C.C.A.N. 5963, 6269.
[65] *Butner*, 440 U.S. 48, 54–55.

The Association contends the limited priority created by section 46:8B-21(b) guarantees a portion of the Association's secured claim will always have a secured interest in the Property and, therefore, the Association's claim is afforded anti-modification protections pursuant to section 1322(b)(2). In relevant part, section 46:8B-21 states the following:

> a.    The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees; provided however that an association shall not record a lien in which the unpaid assessment consists solely of late fees. Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit, the name of the record owner, the amount due and the date when due. Such claim of lien shall include only sums which are due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association. Upon full payment of all sums secured by the lien, the party making payment shall be entitled to a recordable satisfaction of lien. Except as set forth in subsection b. of this section, all such liens shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien.

> b.    A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens, except for municipal liens or liens for federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:

>> (1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien.

>> (2) With respect to a particular mortgage, to a lien recorded prior to: (a) the receipt by the association of a summons and complaint in an action to foreclose a mortgage on that unit; or (b) the filing with the proper county recording office of a

13

lis pendens giving notice of an action to foreclose a mortgage on that unit.

(3) In the case of more than one association lien being filed, either because an association files more than one lien or multiple associations have filed liens, the total amount of the liens granted priority shall not be greater than the assessment for the six-month period specified in paragraph (1) of this subsection. Priority among multiple filings shall be determined by their date of recording with the earlier recorded liens having first use of the priority given herein.

(4) The priority granted to a lien pursuant to this subsection shall expire on the first day of the 60th month following the date of recording of an association's lien.

(5) A lien of an association shall not be granted priority over a prior recorded mortgage or mortgages under this subsection if a prior recorded lien of the association for unpaid assessments has obtained priority over the same recorded mortgage or mortgages as provided in this subsection, for a period of 60 months from the date of recording of the lien granted priority.

(6) When recording a lien which may be granted priority pursuant to this act, an association shall notify, in writing, any holder of a first mortgage lien on the property of the filing of the association lien. An association which exercises a good faith effort but is unable to ascertain the identity of a holder of a prior recorded mortgage on the property will be deemed to be in substantial compliance with this paragraph. . . . [66]

The Court of Appeals for the Third Circuit has not addressed the issue before this Court.

Nevertheless, several courts within the District of New Jersey have grappled with the issue[67] in an

---

[66] Condominium Act § 46:8B-21(a)-(b).

[67] My colleague, the Honorable Michael B. Kaplan, provided an updated and full analysis of the existing case law within the District of New Jersey.  *See Keise*, 564 B.R. at 263-64 (citing *Robison*, 2012 WL 761251, at *1-*3; *Rones*, 531 B.R. at 526; *Rones*, 551 B.R. at 162; *Holmes*, 2016 WL 4950993, at *4).   Nonetheless, it is necessary to again review and discuss those same cases in order to provide the background for the conclusion reached by this Court.

effort to decipher "whether, and to what extent, claims secured by condominium liens and homeowner association liens may be modified in bankruptcy."[68]

*Robinson I* was the first decision by a bankruptcy court in the District of New Jersey to address whether condominium liens may or may not be modified in a Chapter 13 plan.[69]   Similar to the present case, *Robinson I* concerned a debtor seeking to strip off a condominium association's lien in her Chapter 13 plan, claiming the lien was wholly unsecured.[70]   Prior to reaching its ultimate holding, the *Robinson I* court made a critical finding, albeit in a footnote and without an explanation, that a condominium association lien is a security interest.[71]   Notably, in the same footnote, the *Robinson I* court noted the "confusion" is caused by the fact that a condominium association's lien "is supported by both the [condominium association's] bylaws and by state law."[72]   Subsequently, the *Robinson I* court held that the anti-modification provisions of section 1322(b)(2) applied even when the claim, which was secured solely by the debtor's principal residence was wholly unsecured.[73]   The Third Circuit's *In re McDonald* decision overruled *Robinson I*.[74]   The Third Circuit, in overruling *Robinson I*, held that a wholly unsecured mortgage on a Chapter 13 debtor's residence is not subject to the anti-modification clause.[75]

Virtually the same issue arose in another identically named[76] case – *Robinson II*.[77]   The condominium association filed a lien pursuant to the association's master deed and the Condominium Act.   The debtors' plan proposed to modify the condominium association's claim

---

[68] *Keise*, 564 B.R. at 262-63.
[69] *See Robison*, 231 B.R. at 30-31.
[70] *Id.*
[71] *Id.* at 32 n.1.
[72] *Id.*
[73] *Id.* at 34.
[74] *See In re McDonald*, 205 F.3d 606 (3d Cir. 2000).
[75] *Id.* at 615.
[76] *Robinson I* and *Robinson II* concern completely different debtors and are in no way related.
[77] 2012 WL 761251, at *1.

by cramming it down to zero. The *Robinson II* court found that section 46:8B-21(b) granted the condominium association's lien limited priority over the first mortgage up to six months' worth of assessments.[78]  As a result, the lien was secured by at least some equity in the property.[79]  The *Robinson II* court ruled against the debtor and held that "the [d]ebtors' proposed treatment of the [condominium association's] secured claim [was] impermissible" since, pursuant to section 1322(b)(2), the court could not "modify the rights of even partially secured claims which are claims only secured by the Debtors' principal residence."[80]  Indeed, prior to making its ultimate decision, the *Robinson II* court acknowledged that the condominium association's lien derived from both the master deed and the Condominium Act, but the court did not make a finding as to whether the character of the lien was consensual or statutory.[81]

The condominium association lien issue reappeared in 2015, but this time the bankruptcy court tackled the issue of whether the lien arose by statute (section 46:8B-21) or through the language in the master deed and/or bylaws.[82]  The Honorable Christine M. Gravelle conducted an extensive analysis of case law from both within and outside of the Third Circuit.[83]  She observed

---

[78] *Id.* at *3-4.
[79] *Id.* at *3.
[80] *Id.*
[81] *Id.* at *2.
[82] *See Rones*, 531 B.R. 526.
[83] *See id.* at 529-33.

that courts around the country are split on their classification of condominium liens.[84]  In the end,

Judge Gravelle found the "decisions concluding that the condominium liens are statutory [were]

distinguishable on their facts or simply not persuasive. . . ."[85]  Contrary to the holdings issued by

two district courts (outside of New Jersey),[86] she concluded that the condominium association's

lien was a security interest (consensual lien), which held a statutory priority.[87]  Judge Gravelle

stated the following:

> [i]t is the act of purchasing the condominium unit, and voluntarily accepting and recording the unit deed, that gives rise to the lien.
> * * *
> In order to gain the benefit of the super-priority lien provided by the [Condominium] Act, the condominium association must record a Notice of Lien in accordance with the [Condominium] Act.  The [Condominium] Act bestows a priority to the condominium association for the "aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien . . ." [section] 46:8B-21.  The fact that the Act provides a statutory priority lien for a portion of the claim does not change the character of the lien as a security interest.[88]

---

[84] *Id*. at 530.  Judge Gravelle stated the following:
> [w]hile it appears to this Court that the [Bankruptcy] Code definitions of various liens are clear on their face, courts are split on their classification of condominium liens. *Compare In re Robinson*, 231 B.R. 30, 34 (Bankr. D.N.J. 1997) (notes condominium lien is security interest); *In re Beckley*, 210 B.R. 391, 393 (Bankr. M.D. Fla. 1997) (debt owed to association in form of final judgment remains a security interest); *Phillippy v. Corkscrew Woodlands Assocs., Inc*. (*In re Phillippy*), 178 B.R. 67, 69–70 (Bankr. M.D. Pa. 1994) (debt owed to association pursuant to notice of lien remains security interest); *In re Bland*, 91 B.R. 421, 422 (Bankr. N.D. Ohio 1988) (condominium liens are security interests, not judicial liens, for purposes of 11 U.S.C. § 522(f)) *with In re Green*, 516 B.R. 347, 351 (E.D. La. 2014) (condominium lien arises from statute, not Declaration); *Young v. 1200 Buena Vista Condos.*, 477 B.R. 594, 602 (W.D. Pa. 2012) (condominium liens are statutory); *In re Lopez*, 512 B.R. 663, 671 (Bankr. D. Colo. 2014) (condominium association lien generally recognized as statutory).

*Rones*, 531 B.R. at 530.

[85] *Id*. at 531.

[86] *See Green*, 516 B.R. 347, 351 (E.D. La. 2014) (holding that the condominium association's lien against debtor's condominium unit was statutory, and thus could be modified pursuant to debtor's Chapter 13 Plan); *Young*, 477 B.R. 594, 602 (W.D. Pa. 2012) (finding the condominium association liens are statutory).

[87] *Id*. at 533.

[88] *Id*.

In the end, Judge Gravelle ruled that the secured claim could be bifurcated and the portion of the claim that did not have a statutory priority was subject to modification.[89]

The condominium association appealed Judge Gravelle's ruling.  It is important to note that on appeal to the district court, the parties did not contest Judge Gravelle's characterization of the condominium association's lien as a consensual lien.  The parties instead limited the appeal to a single issue: whether a consensual lien, with a partial priority, could be crammed-down.[90]  The district court reversed in part and remanded.  The district court held that: (1) section 46:8B–21 provides a limited priority for condominium association liens for unpaid assessments, which ensures the claim is secured by a security interest in the debtors' principal residence; and (2) no portion of the condominium association's secured claim could be modified pursuant to section 1322(b)(2).[91]

The nature of a condominium association's lien was again revisited in the New Jersey district court case *Holmes*.  In *Holmes*, the debtor appealed a bankruptcy court decision[92] that denied confirmation of her Chapter 13 plan.[93]  The bankruptcy court previously found the debtor's Chapter 13 plan was not feasible as a matter of law because the plan sought to modify a condominium association's lien in defiance of section 1322(b)(2).[94]

The appeal presented a single issue: whether a condominium association lien is a security interest in the debtor's principal residence, and hence subject to the anti-modification provision set forth in section 1322(b)(2).[95]  The district court never decided the issue.  Instead, the district court remanded the case to the bankruptcy court to permit factual findings regarding "the existence,

---

[89] *Id.* at 536-37.
[90] *See In re Rones*, 551 B.R. 162.
[91] *Id.* at 169-72.
[92] The bankruptcy court issued an oral decision.
[93] 2016 WL 4950993, at *1-2.
[94] *Id.* at *1 (summarizing the bankruptcy court's holding).
[95] *Id.*

priority, and recordation of (a) any security interest; (b) any statutory lien; (c) the priority of such; and (d) relatedly, whether any such lien is secured by equity in the property."[96] In remanding, the district court made notable observations about the nature of the condominium association's lien. First, the district court observed that the Condominium Act "seemingly *can* operate to create a lien."[97] Second, the district court suggested the possibility of multiple liens operating simultaneously:

> [s]o it is not so simple to say that there is a security interest (*i.e.*, one arising from agreement), as to which the [Condominium] Act merely sets a priority. Remember, the condominium association's lien is secured by the unit (which is underwater on its mortgage) *only* to the extent it can be regarded as senior to the mortgage. So the priority issue under the [Condominium] Act is inextricably intertwined with the issue of whether the lien is secured by the unit *at all*.[98]

In the most recent decision, *Keise*, a District of New Jersey bankruptcy court was again asked to revisit whether, for the purposes of section 1322(b)(2), a lien held by either a homeowner's or condominium association[99] is a security interest (consensual lien) or a statutory lien.[100] The facts in *Keise* are strikingly similar to those of this case.[101] The debtors failed to pay a numbers of assessments and the homeowner's association filed a lien against the property.[102] The debtors' Chapter 13 plan provided for a bifurcation of the homeowner association's secured claim − reducing it to six months of unpaid assessments.[103] The debtors argued that the

---

[96] *Id*. at *5.

[97] *Id*. *4 (emphasis in original) (citing section 46:8B−21(a) ("[t]he association shall have a lien on each unit for any unpaid assessment . . . upon proper notice to the appropriate unit owner")).

[98] *Id*. *4 (emphasis in original).

[99] In *Keise*, the issue related to a homeowner's association instead of condominium association.  564 B.R. at 256. Judge Kaplan − while not agreeing with the legal authority leading to his conclusion − ultimately recognized that condominium associations and homeowner's associations are both controlled by the Condominium Act.  *Id.*

[100] 564 B.R. at 256.

[101] The only undeniable, albeit inconsequential, factual difference is that this case pertains to a condominium association while *Keise* concerned a homeowner's association.  *See id.* at 256.

[102] *Id*. at 257.

[103] *Id*.

homeowner's association's lien was statutory and, therefore, subject to modification.[104]  Citing to

the Bankruptcy Code's definition of "statutory lien" under section 101(53), the homeowner's

association contended that the existence of an agreement creating a security interest precludes the

lien from being classified as statutory.[105]  To this end, the homeowner's association argued that

section 46:8B-21 does not create a lien, but serves only to dictate the priority and mechanisms for

enforcement of a consensual lien created by the agreement.[106]  The limited priority granted by

section 46:8B-21 ensured that a portion of the homeowner's association's lien was secured, and as

a result, the entire lien could not be modified.[107]

The *Keise* court partially deviated from Judge Gravelle's holding in *Rones*, finding the

condominium association's claim as:

> secured simultaneously by two separate liens—one consensual lien
> created by the Declaration and one statutory lien created by the New
> Jersey Condominium Act—with each lien available to the
> [condominium association's] to enforce its claim . . . . [E]ach lien
> offers both benefits and burdens with regard to creation, perfection
> and enforcement.[108]

---

[104] *Id*. at 262.
[105] *Id*. at 261-62.
[106] *Id*.
[107] *Id*.
[108] *Id.* at 263-64.

In reaching its ultimate holding, the *Keise* court made a number of findings.  First, "[t]he Condominium Act explicitly provides for the creation of a lien."[109]  Specifically, Judge Kaplan found the language of section 46:8B-21(a) ("[t]he association shall have a lien on each unit for any unpaid assessments duly made by the association for a share of common expenses or otherwise . . .")[110] clearly and unambiguously creates a lien. [111]  Second, Judge Kaplan determined that the agreement between the debtors and the homeowner's association itself created a consensual lien:

> [w]hile the Court deems it evident that the [Condominium] Act, in and of itself, creates a lien securing outstanding assessments, the [c]ourt also finds that the Declaration creates a consensual lien. Specifically, the Declaration states in relevant part, "assessment[s], together with such interest thereon, late charges, and cost of collection thereof (including reasonable attorneys' fees) *shall be a continuing lien* upon the Lot against which each such assessment is made . . ." Thus, by consenting to the Declaration, the Debtors also have granted a lien in favor of the [a]ssociation in the event the [d]ebtors fail to pay assessments.[112]

Third, Judge Kaplan opined that "[n]othing in the Condominium Act, the Declaration or the bankruptcy code precludes the creation and employment of multiple enforcement mechanisms to recover a single debt."[113]  Fourth, Judge Kaplan observed that section 46:8B-21(f) reinforces the premise that the homeowner's association's claim is secured by two separate liens.  Section 46:8B-21(f) provides the following:

> f. Liens for unpaid assessments may be foreclosed by suit brought in the name of the association in the same manner as a foreclosure of a mortgage on real property. . . . Suit to recover a money judgment for unpaid assessments may be maintained without waiving the lien

---

[109] *Id.* at 264.
[110] Condominium Act § 46:8B-21(a).
[111] *Keise*, 564 B.R. at 264.
[112] *Id.*
[113] *Id.*

securing the same. Nothing herein shall alter the status or priority of municipal liens under R.S.54:5–1 *et seq.*[114]

The court interpreted this subsection to mean "an association may pursue an *in personam* judgment, resulting in a judgment lien, without waiving its rights to pursue enforcement of its statutory lien."[115] Fifth, Judge Kaplan observed that recent state and federal case law support the legal conclusion that the condominium association's claim is secured by two liens. Judge Kaplan pointed to the *Hickory Hill at Totowa Homeowners Ass'n, Inc. v. Ortiz* decision, wherein a New Jersey state appellate court permitted a homeowner's association to levy on a judicial lien, even though the association was entitled to a statutory lien securing the same claim.[116] Correspondingly, Judge Kaplan interpreted *Holmes* to suggest that "both a contractual and statutory lien may be present, and should be considered separately."[117]

Finally, Judge Kaplan deduced that finding the homeowner's association's claim is secured by both a consensual lien and statutory lien is consistent with and reinforces public policy concerns.[118]

> As the Third Circuit has observed, "[t]he legislative history of § 1322(b)(2) 'indicates that it was designed to protect and promote the increased production of homes and to encourage private individual ownership of homes as a traditional and important value in American life.'" *In re Ferandos*, 402 F.3d 147, 151 (3d Cir. 2005) (quoting *In re Davis*, 989 F.2d 208, 210 (6th Cir. 1993)). The Supreme Court has also noted that the protection afforded to residential mortgage lenders by § 1322(b)(2) "was intended to encourage the flow of capital into the home lending market." *Nobelman*, 508 U.S. at 332, 113 S.Ct. at 2112, 124 L.Ed.2d. However, a residential mortgage is not at issue in this case. Instead, the claim is for unpaid condominium association fees, which are not

---

[114] Condominium Act § 46:8B-21(f).

[115] *Keise,* 564 B.R. at 265.

[116] No. A-0894-15T2, 2017 WL 393582 (N.J. Super. Ct. App. Div. Jan. 30, 2017).

[117] *Keise*, 564 B.R. at 265 (citing *Holme*s, 2016 WL 4950993 at *4).

[118] *Keise*, 564 B.R. at 265.

the types of debts Congress sought to protect by enacting § 1322(b)(2).[119]

In finding that the condominium association's claim is secured by both a consensual and statutory lien, Judge Kaplan held that the condominium association's claim "does not fall within the ambit of §1322(b)(2)."[120]  He observed that section 1322(b)(2) is applicable when "a claim [is] secured **only** by a security interest in real property that is the debtor's principal residence . . . ."[121] Hence, since the condominium association's claim was secured by both a security interest and a statutory lien, Judge Kaplan held "it is not afforded the protections of [section] 1322(b)(2)."[122]

### A.    The Association Complied with Sections 46:8B-21(a) and (b)(6).

At the outset, the Court must address the Debtor's challenge as to whether the Association provided sufficient evidence to prove it notified the Debtor and Champion Mortgage of its Liens in accordance with sections 46:8B-21(a) and (b)(6).  Section 46:8B-21(a) requires, *inter alia*, that the condominium association provide notice of the lien "to the appropriate unit owner."  At the same time, in order for a lien to benefit from the limited priority, it needs to also satisfy six requirements listed under section 46:8B-21(b), one of which is subsection (6).  Section 46:8B-21(b)(6) provides the following:

> (6) When recording a lien which may be granted priority pursuant to this act, an association shall notify, in writing, any holder of a first mortgage lien on the property of the filing of the association lien. . . .[123]

In response to the Debtor's challenge, the Association submitted to the Court copies of two letters. The first letter was sent to the Debtor and the second letter was sent to Champion Mortgage.  Both

---

[119] *Id*.
[120] *Id*.
[121] *Id*.
[122] *Id*. at 265-66.
[123] Condominium Act § 46:8B-21(b)(6).

letters were sent on June 7, 2013.   In sum, both letters explain that the 2013 Lien was being

recorded on the Property due to the Debtor's failure to pay monthly assessments.   The Court finds

the letters to be sufficient evidence demonstrating the Association notified both the Debtor and

Champion Mortgage of the 2013 Lien and, therefore, complied with sections 46:8B-21(a) and

(b)(6).

The Association failed to provide the Court with evidence indicating it notified the Debtor

and/or Champion Mortgage that it was recording the 2012 Lien.   Therefore, the Court cannot find

that the 2012 Lien benefits from limited priority over Champion Mortgage.   However, the Court

does not find this to be a fatal omission because section 46:8B-21(b)(5) prohibits a condominium

association from holding two liens with limited priority on the same property.   Section 46:8B-

21(b)(5) provides the following:

> [a] lien of an association shall not be granted priority over a prior
> recorded mortgage or mortgages under this subsection if a prior
> recorded lien of the association for unpaid assessments has obtained
> priority over the same recorded mortgage or mortgages as provided
> in this subsection, for a period of 60 months from the date of
> recording of the lien granted priority.[124]

The Association recorded the 2012 Lien in February 2012 and the 2013 Lien in June 2013.

The Liens were recorded approximately 16 months apart from each other.   Even if the Association

provided evidence that it notified the Debtor and Champion Mortgage of the 2012 Lien, pursuant

to section 46:8B-21(b)(5) only one of the Liens would maintain limited priority over Champion

Mortgage.[125]   Since the Association provided evidence sufficient to support the 2013 Lien, that is

the lien the Court will review.

---

[124] *Id*. § 46:8B-21(b)(5).
[Footnote 125 intentionally deleted.]

**B.    The Association's Secured Claim is Secured by Both a Consensual and Statutory Lien.**

The Court is persuaded by and adopts the reasoning in *Keise*.  For the reasons stated in *Keise*, the Court finds the Association's secured claim is secured by both a statutory lien arising out of the Condominium Act and a consensual lien arising out of the Master Deed.  This Court joins the *Keise* court and accepts the suggestion made by the *Holmes* court that section 46:8B-21(a) operates to create a lien.  First, this Court agrees that the language of section 46:8B-21(a) explicitly provides for the creation of a statutory lien by utilizing the phrase "[t]he association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed to the association. . . ."[126] Second, section 46:8B-21(a) encompasses greater economic protections for condominium associations than a bare bones master deed.  Section 46:8B-9 of the Condominium Act lists the mandatory contents of a master deed.[127]  Pursuant to section 46:8B-9, condominium associations are neither required to include language giving rise to a lien for unpaid assessments nor any language giving rise to a lien for any other unpaid monies owed to the association.[128]  However, according to section 46:8B-21(a), condominium associations may file a lien encompassing both monies owed for both unpaid assessments and other unpaid monies owed to the condominium association.  The Condominium Act lien occurs regardless of whether the master deed provides for the ability to obtain a lien, thus giving rise to a statutory lien.

Beyond the fact that the Association concedes that its secured claim is secured by a consensual lien, the Court also finds the Master Deed creates a consensual lien.  Specifically, the Master Deed states: "all charges, expenses and assessments chargeable to any unit plus reasonable

---

[126] Condominium Act § 46:8B-21(a).
[127] *Id.* § 46:8B-9.
[128] *Id.*

attorney's fee [sic] incurred for the recovery thereof, shall constitute a lien against said unit in favor of the Association . . . ."[129]  Hence, when the Debtor purchased the Property and consented to the Master Deed, the Debtor granted a lien in favor of the Association giving rise to a consensual lien.[130]

### C.    The Debtor May Modify the Association's Secured Claim.

The Court finds that section 1322(b) does not apply because the Association's secured claim is secured by both a consensual and statutory lien.  As mentioned above, section 1322(b)(2) applies "when a claim [is] secured **only** by a security interest in real property that is the debtor's principal residence. . . ."[131]  Here, both a consensual and a statutory lien exist.  Therefore, the Association's claim may be modified.[132]

However, not all is lost for the Association.  As previously stated "[p]roperty interests are created and defined by state law."[133]  Section 46:8B-21(a) provides:

> b. **A lien recorded pursuant to subsection a.** of this section shall have a limited priority over prior recorded mortgages and other liens . . . .
>
> (1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the **six month period prior to the recording of the lien**. [134]

Section 46:8B-21(a) provides the Association with a six month priority that is not subject to modification or cram-down.  The Court finds that the Association possesses a secured claim for

---

[129] (Docket No. 20 at 17) (error in original).
[130] *See Keise*, 564 B.R. at 265 (finding a consensual lien existed through the operation of similar language); *Rone*s, 531 B.R. at 533 ("voluntarily accepting and recording the unit deed . . . gives rise to the lien.").
[131] 11 U.S.C. § 1322(b)(2) (emphasis added).
[132] Since the Court's holding rules out the applicability of section 1322(b)(2), the Court does not need to analyze whether the Debtor's section 1322(c)(2) argument has merit as there is no need to evaluate an exception to a provision that does not apply.
[133] *Butner*, 440 U.S. at 54–55.
[134] Condominium Act § 46:8B-21(b)(1) (emphasis added).

$1,500.00, representing six months of unpaid condominium assessments, payable under the Plan. When the 2013 Lien was recorded, the Association charged a $250.00 monthly condominium assessment fee. Six months of such monthly condominium fees equates to $1,500.00. The residual amount of the Association's lien has no priority and is subordinate to the existing lien of Champion Mortgage. Accordingly, the balance of the Association's claim is unsecured and shall be treated under the Plan the same as all other general unsecured claims.

## **CONCLUSION**

The Court overrules the Association's objection and grants confirmation of the Debtor's proposed plan. The Debtor may amend her Plan to provide for a payment of $1,500.00 to the Association and designate the reminder of the Association's claim as unsecured. The Debtor's counsel or the Standing Chapter 13 Trustee shall submit a proposed form of order consistent with this Court's opinion.

Dated:  July 12, 2017

_Stacey L. Meisel_
Honorable Stacey L. Meisel
United States Bankruptcy Judge